# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**CONSTRUCTION INDUSTRY
LABORERS PENSION FUND, et al.,**

    *Plaintiffs,*

vs.

Case No. 12-2624-EFM

**EXPLOSIVE CONTRACTORS, Inc.**

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiffs filed suit alleging that they are owed unpaid employee benefit contributions pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA")[1] and Defendant responded with several affirmative defenses. Plaintiffs moved to strike certain affirmative defenses as irrelevant, immaterial and unavailable as a matter of law; or in the alternative to require Defendant to make a more definite statement of its affirmative defenses (Doc. 14). For the reasons stated below, the Court grants the motion to strike with respect to Defendant's fourth affirmative defense, and denies the motion with respect to the fifth, sixth, seventh, and eighth affirmative defenses. However, the Court orders Defendant to make a more definitive statement in regards to those affirmative defenses.

---

[1] 29 U.S.C. §§ 1132, 1145.

## I. Factual and Procedural Background

Four employee fringe benefit funds and their respective Trustees collectively filed a complaint asserting that Defendant Explosive Contractors, Inc., neglected to pay employee benefit contributions pursuant to a collective bargaining agreement entered into between the four respective funds and Defendant. Plaintiff claims that an audit revealed that Defendant underpaid the pension fund from January 1, 2010, to September 30, 2012. In its answer to Plaintiffs' amended complaint, Defendant asserted numerous defenses, including the following affirmative defenses: (1) defect in contract formation, (2) fraud in the execution, (3) contract interpretation, (4) dereliction of fiduciary duties, and (5) various equitable defenses. Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure,[2] Plaintiffs filed a motion to strike these five affirmative defenses. In the alternative, they requested that the Court order Defendant to make a more definitive statement regarding each affirmative defense.

## II. Legal Standard

Rule 12(f) permits the Court to strike from a pleading "any redundant, immaterial, impertinent or scandalous matter."[3] The decision of whether to strike material from a pleading is within the discretion of the Court.[4] It is also well-settled that motions to strike are generally

---

[2] *See* Fed. R. Civ. P. 12(f)("Upon a motion made by a party within twenty-one (21) days after the service of the pleading upon the party or upon the court's initiative at any time, the court may order stricken from any pleading any insufficient defense . . . .").

[3] *Id.*

[4] *Geer v. Cox*, 242 F.Supp.2d 1009, 1025 (D.Kan. 2003) ("Although motions to strike are generally disfavored, the decision to grant a motion to strike is within the discretion of the court.").

disfavored because they are drastic measures and can be used as a dilatory tactic.[5] But the motion before the Court today raises unsettled questions regarding the application of the *Iqbal/Twombly* standard to affirmative defenses. This standard was introduced in *Bell Atlantic Corp. v. Twombly*, in which the Supreme Court held that a complaint must be "plausible on its face" and rise above "labels and conclusions."[6] *Ashcroft v. Iqbal* clarified that the standard articulated in *Twombly* was an interpretation of Fed. R. Civ. P. 8, and therefore applied to all civil actions, and not merely the case before the Court in *Twombly*.[7] Together, *Twombly* and *Iqbal* overturned the comparatively lenient notice pleading standard previously set out in *Conley v. Gibson*.[8] Both *Twombly* and *Iqbal*, however, addressed the pleading requirements for claims for relief—neither case discussed affirmative defenses. Since *Twombly* and *Iqbal* were decided, district courts have split over whether the heightened pleading standard applies to affirmative defenses, with most courts holding that the more rigorous *Twombly/Iqbal* standard does apply to affirmative defenses.[9] Neither the Supreme Court nor the Tenth Circuit have yet addressed the issue.

---

[5] *See Fed. Deposit Ins. Corp. v. Niver*, 685 F. Supp. 766, 768 (D. Kan. 1987) ("A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.").

[6] 550 U.S. 544, 570 (2007).

[7] *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (holding that the petitioner's pleadings did not comply with Rule 8 under *Twombly*).

[8] 355 U.S. 41 (1957).

[9] *See, e.g.*, *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010) ("The court can see no reason why the same principles applied to pleading claims should not apply to the pleading of affirmative defenses which are also governed by Rule 8."); *Racick v. Dominion Law Assoc.*, 270 F.R.D. 228, 234 (E.D. N.C. 2010) ("This court, however, agrees with the district courts within the Fourth Circuit that have considered the question and conclude that . . . the same pleading requirements apply equally to complaints and affirmative defenses."); *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 691 (N.D. Ohio 2010) ("While the language in Civil Rule 8(a) differs from the language in Civil Rule 8(b) & (c), this difference is minimal and simply reflects the fact that an answer is a response to a complaint. Furthermore, the shared use of the 'short and

Furthermore, there is a split within our own district regarding the applicability of the *Iqbal/Twombly* standard regarding affirmative defenses. In *Falley v. Friends University*, Judge Murguia held that the heightened standard did not apply to affirmative defenses.[10] The *Falley* opinion compared language the language found in Rule 8(a), which governs claims for relief, and Rule 8(c), which applies to affirmative defenses, and found the two rules to be sufficiently different to justify different pleading standards.[11] But in *Hayne v. Green Ford Sales, Inc.*, Judge Rushfelt held that the *Iqbal/Twombly* standard did apply to affirmative defenses.[12] Judge Rushfelt also looked to the language of Rule 8, and noted that Rule 8(b)(1), which applies to defenses in general, "does require a defendant to 'state in short and plain terms its defenses to each claim.'"[13] The court in *Hayne* further noted that "[a]pplying the standard for heightened pleading to affirmative defenses serves a valid purpose in requiring at least some valid factual

---

plain' language—the essence of the pleading standard—indicates the pleading requirements for affirmative defenses are the same as for claims of relief."); *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D. N.Y. 2009) (striking affirmative defenses that were "plainly deficient" under the *Iqbal* standard); *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 650 (D. Kan. 2009) (holding that the *Iqbal/Twombly* standard is applicable to affirmative defenses); *FDIC v. Bristol Home Mortg. Lending, LLC*, 2009 WL 2488302, at *2–4 (S.D. Fla. 2009) (applying *Twombly* to affirmative defenses).

*But see Falley v. Friends Univ.*, 787 F. Supp. 2d 1255 (D. Kan. 2011) (holding that the *Iqbal/Twombly* standard is not applicable to affirmative defenses); *Wells Fargo & Co. v. U.S.*, 750 F. Supp. 2d 1049 (D. Minn. 2010) (holding that the *Iqbal/Twombly* standard does not apply to affirmative defenses, because plaintiffs have more time to research their claims than defendants have to research their affirmative defenses); *Odyssey Imaging, LLC v. Cardiology Assocs. Of Johnston, LLC*, 752 F. Supp. 2d 721 (W.D. Va. 2010) (holding that the *Iqbal/Twombly* standard is not applicable to affirmative defenses because the "[k]nowledge at the pleading stage" disproportionately favors the plaintiff); *Leon v. Jacobson Transp. Co.*, 2010 WL 4810600, at *1 (N.D. Ill. 2010) (holding that the *Iqbal/Twombly* standard does not apply to affirmative defenses because while the plaintiff has the length of the statute of limitations to research their claim, the defendant has twenty-one days).

[10]   787 F. Supp. 2d at 1257–58.

[11]   *Id.*

[12]   263 F.R.D. at 650.

[13]   *Id.* (quoting Fed. R. Civ. P. 8(b)(1)).

basis for pleading an affirmative defense and not adding it to the case simply upon some conjecture that it may somehow apply."[14]

This Court agrees with *Hayne* and those jurisdictions that have interpreted the *Twombly/Iqbal* standard as applicable to affirmative defenses.[15] Claims for relief and affirmative defenses are both pleadings governed by Fed. R. Civ. P. 8. As noted earlier, *Iqbal* held that *Twombly* was an interpretation of Rule 8 generally, and not merely an application of Rule 8 to the specific case before the Court at that time.[16] In other words, *Iqbal* holds that all Rule 8 pleadings must comport with the standard articulated by *Twombly*. In both stages of pleading—claims for relief and affirmative defenses—the opposing party must be given notice, at minimum, that there is a plausible basis for the claim or defense.[17] Proper notice, then, is given only when the opposing party shows that there is a plausible basis for the claim or the defense. Conclusory, vague statements do not sufficiently provide adequate notice.[18] Because *Twombly* was an interpretation of Rule 8 generally, and because both stages of pleadings are governed by Rule 8, it does not make sense to argue that mere conclusory statements do not equate to fair

---

[14] *Id.*

[15] Neither party explicitly mentioned the issue of whether the *Twombly/Iqbal* standard applies to affirmative defenses. But Plaintiff, in requesting the Court order Defendant to make a more definite statement, is functionally asserting that mere notice of the affirmative defenses Defendant will use is insufficient. Additionally, Defendant relies on *Falley*, 787 F. Supp. 2d 1255, to support the fact that he is under no obligation to allege the existence of factual support for his affirmative defenses. *Falley* was specifically addressing whether the *Twombly/Iqbal* standard applies to affirmative defenses, and found that it did not.

[16] *Iqbal*, 556 U.S. at 684 ("Though *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. That rule in turn governs the pleading standard in all civil actions . . . .").

[17] *See Barnes*, 718 F.Supp.2d at 1172 (asserting that because both forms of pleading—claims for relief and affirmative defenses—are governed by Rule 8, and because the *Twombly/Iqbal* standard is an interpretation of Rule 8, the same pleading standard should apply).

[18] *Robbins v. Okla.*, 519 F.3d 1242, 1246-47 (holding that although under *Conley* "a complaint containing only conclusory allegations" gave sufficient notice, under *Twombly* such a complaint did not give sufficient notice, but was now held to a more-stringent, plausibility standard).

notice when it comes to claims for relief, but then somehow do equate to fair notice when it comes to affirmative defenses.[19] The *Twombly/Iqbal* standard, then, should apply to both claims for relief and affirmative defenses. A Rule 12(f) determination of whether to strike matter from a pleading, no matter which Rule 8 pleading the determination is being applied to, should be consistent.

### III. Analysis

Plaintiffs move to strike five of the affirmative defenses asserted by Defendant. The five defenses they wish to strike are as follows: (1) defect in contract formation, (2) fraud in the execution of the agreement, (3) Plaintiffs' claims are barred by operation of the contract, (4) Plaintiffs' claims are barred because Plaintiffs failed to perform required duties, and (5) various equitable defenses. The Court will address each defense in turn.

**A.  Fourth Affirmative Defense: Defect in Contract Formation**

Plaintiffs first move to strike Defendant's Fourth Affirmative Defense, which alleges a defect in contract formation. Defendant claims that the "underlying obligations upon which plaintiffs' claim arise were entered into through unilateral and or mutual mistake and are therefore void and unenforceable."[20] Both unilateral and mutual mistake are contract formation defenses. But § 515 of ERISA states that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement

---

[19]  *See Hayne*, 263 F.R.D. at 650 ("It makes no sense to find that a heightened pleading standard applies to claims but not to affirmative defenses. In both instances, the purpose of pleading requirements is to provide enough notice to the opposing party that indeed there is some plausible, factual basis for the assertion and not simply a suggestion of possibility that it may apply to the case.").

[20]  Def.'s Answer to Am. Compl., Doc. 9 at 3.

shall . . . make such contributions" according to the terms agreed upon.[21] The Tenth Circuit has agreed with all other circuit courts in interpreting § 515 to mean that there is a right of action to collect on unpaid contributions that is separate from general breach of contract rights and remedies.[22] The purpose of § 515 is to avoid the costly litigation that contract formation disputes can cause, and to "simplify actions to collect delinquent contributions."[23] In other words, § 515 is designed to "strengthen the position of multiemployer plans" by eliminating the possibility of dispute over the terms and formation of the contract, and instead "holding employers and unions to the literal terms of their written commitments."[24] Because Defendant's Fourth Affirmative Defense is a contract formation dispute—which is exactly what § 515 was designed to avoid— the purpose of § 515 would be destroyed if the Court allowed this defense to be asserted. According to § 515, the actual terms of the contract are what govern whether Plaintiff has a right to collect the allegedly delinquent funds, regardless of the intent of the parties or any mistake either party may have made during contract formation.[25] Therefore, the Court grants the motion to strike the Fourth Affirmative Defense.

---

[21] 29 U.S.C. § 1145.

[22] *See Tr. of Colo. Tile, Marble & Terrazo Workers Pension Fund v. Wilkinson & Co., Inc.*, 134 F.3d 383, at *5 (10th Cir. 1998) ("Though this circuit has not yet had cause to interpret and apply § 515, we agree with all of the circuits who have, that it makes it easier for multiemployer plans to collect delinquent contributions and limits the defenses available to employers."); *see also Bituminous Coal Operators Ass'n, Inc. v. Connors*, 867 F.2d 625, 633 (D.C. Cir. 1989) (stating that section 515 "creates a federal right of action independent of the contract on which the duty to contribute is based").

[23] *Cent. State S.E. & S.W. Areas Pension Fund v. Indep. Fruit & Produce Co.*, 919 F.2d 1343, 1348 (8th Cir. 1990).

[24] *Trs. of Colo. Tile*, 134 F.3d at *5.

[25] *Cent. State S.E. & S.W. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1153 (7th Cir. 1989) ("If the employer simply points to a defect in [the contract's] formation—such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law—it must still keep its promise to the pension plans.").

## B. Fifth Affirmative Defense: Fraud in the Execution

Plaintiffs next move to strike Defendant's Fifth Affirmative Defense. In the alternative, Plaintiffs request that the Court order Defendant to provide a more definite statement of the defense. Defendant's Fifth Affirmative Defense argues "that the agreements upon which the plaintiffs' rely . . . are void *ab initio* due to fraud in the execution of the agreements."[26] Fraud in the execution occurs if "a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know the character or essential terms of the proposed contract."[27]

Plaintiffs counter that such a defense "could not succeed under any circumstances" because Defendant "remitted a portion of the contributions to the Funds under the terms of the collective bargaining agreement."[28] In other words, Plaintiffs argue that Defendant cannot claim fraud in the execution because Defendant paid at least a portion of the contributions, indicating that they were aware of their obligation to contribute to the pension fund. But parties to a collective bargaining agreement are always permitted to argue defenses that render a contract void, and not merely voidable, because a void agreement imposes no legal obligations.[29] Whether a party was aware of any alleged obligations is immaterial to the question of whether

---

[26] Def.'s Answer to Am. Compl., Doc. 9 at 3.

[27] *Colo. Plasterers' Pension Fund v. Plasterers' Unlimited, Inc.*, 655 F. Supp 1184, 1186 (D. Colo. 1987).

[28] Pls.' Mot. to Strike Affirm. Defenses, Doc. 14, at 4.

[29] *Trs. of Colo. Tile* 134 F.3d at *5; *see also La. Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 408 (5th Cir. 1998); *Indep. Fruit* 919 F.2d at 1349 ("In sum, the courts recognize only two defenses to a collection action: that the pension contributions are themselves illegal or that *the collective bargaining agreement is void*." (Emphasis added.)).

such obligations ever came into being.[30] Because the law permits an affirmative defense asserting that the collective bargaining agreement is void due to fraud in the execution, the Court declines to strike the defense.

Nevertheless, the fraud in the execution defense, as pleaded by Defendant, is so vague or ambiguous that Plaintiffs could not possibly be expected to prepare a response to it. Moreover, the Federal Rules of Civil Procedure prohibit such vagueness and ambiguity.[31] Defendant relies on an understanding of Rule 8(b) and (c) that does not conform to the *Iqbal/Twombly* standard as articulated above, and which this Court has found to be applicable to the pleading of affirmative defenses.[32] Specifically, Defendant argues that it is "not required to plead facts supporting a defense" and that "Plaintiffs can obtain further clarification through the discovery process."[33] But Defendant's affirmative defense was a bare statement that the collective bargaining agreement is void because of fraud in the execution. Defendant does not even allege the existence of facts that would support their claim. This view of the pleading standard for affirmative defenses—that conclusory, stand-alone statements are sufficient, and that Defendant is not required to allege even the existence of supporting facts—does not meet the *Iqbal/Twombly* standard. Thus, the Court, pursuant to Fed. R. of Civ. P. 12(e), orders Defendant to provide a more definite statement of its Fifth Affirmative Defense that, at the very least, alleges the existence of facts that would support the defense.

---

[30] *See Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (distinguishing between contract formation defenses and fraud in the execution defenses); *S.W. Adm'r Inc. V. Rozay's Transfer*, 791 F.2d 769, 773-75 (9th Cir. 1986) (distinguishing between "fraud in the inducement" and "fraud in the execution," and holding that Defendant's awareness of the contractual obligations was immaterial), *cert. denied,* 479 U.S. 1065 (1987).

[31] Fed. R. Civ. P. 12(e).

[32] *See* Def.'s Resp. to Mot. to Strike, Doc. 17, at 4.

[33] *Id.*

## C. Sixth Affirmative Defense: Operation of the Contract

Plaintiffs next move to strike Defendant's Sixth Affirmative Defense, which alleges "that plaintiffs' claims are barred, as the agreements are no longer in operation or effect."[34] In the alternative, Plaintiffs request that the Court order Defendant to provide a more definite statement regarding their Sixth Affirmative Defense. Plaintiffs argue that Defendant is asserting another contract formation affirmative defense, which, as the Court noted above, is not an allowable defense.

But Defendant could also be arguing that the terms of the contract itself render the agreement ineffective. Section 515 enforces the obligation to make contributions "in accordance with the terms and conditions of such plan or agreement."[35] Thus, although contract formation is not a permitted affirmative defense in the context of delinquent contributions to pension funds, the contract must be enforced according to its own terms. If a proper interpretation of the terms of the contract shows that Defendant does not owe any contributions to the pension fund, then Plaintiff, of course, has no right to relief from the Court. Defendant is permitted to assert that Plaintiff is barred from recovery by the express terms of the contract. Thus, the Court denies Plaintiffs' motion to strike Defendant's Sixth Affirmative Defense.

Defendant, however, needs to clarify what theory this particular defense asserts, and must do so in accordance with the *Iqbal/Twombly* standard for pleadings. Merely stating that the agreement is "no longer in operation or effect" does not comport with that standard. Thus, the Court orders Defendant to make a more definite statement as it relates to its Sixth Affirmative Defense.

---

[34] Def.'s Answer to Am. Compl., Doc. 9, at 3.

[35] 29 U.S.C. § 1145.

### D. Seventh Affirmative Defense: Dereliction of Fiduciary Duties

Plaintiffs next move to strike Defendant's Seventh Affirmative Defense, which alleges that the "plaintiffs' claims are barred by the plaintiffs' violation of their duties under ERISA" and "that to allow such a claim would be a windfall to the plaintiffs."[36] Plaintiffs moved to strike this defense because they apparently misinterpreted Defendant as alleging that Plaintiffs do not have standing to bring suit. In briefing, however, Defendant clarified that it asserts that Plaintiffs' dereliction of their fiduciary duty prohibits them from collecting contributions. In a seminal case discussing fiduciary duties under ERISA, the Third Circuit held that dereliction of fiduciary duties is a proper defense to collection of contributions.[37] The Court therefore declines to strike Defendant's seventh defense. But because Defendant made a conclusory statement without alleging the existence of facially plausible supporting facts, the Court orders Defendant to provide a more definite statement of its seventh affirmative defense.

### E. Eighth Affirmative Defense: Equitable Defenses

The final affirmative defense that Plaintiffs move to strike is the Eighth Affirmative Defense proffered by Defendant. In the alternative, Plaintiffs request that the Court order Defendant to make a more definite statement regarding the Eighth Affirmative Defense. Defendant asserts as an affirmative defense "waiver, estoppel, laches, release, payment, accord and satisfaction, statute of limitations and failure to give notice."[38] Plaintiff has moved to strike waiver, estoppel, laches, and statute of limitations as defenses to their collection claim. The

---

[36] Def.'s Answer to Am. Compl., Doc. 9, at 3.

[37] *See Agathos v. Starlite Motel* 977 F.2d 1500, 1507 (3d Cir. 1992) (finding that the fiduciaries' dereliction of their duties under ERISA would prohibit them from being able to collect on contributions to prevent windfall).

[38] Def.'s Answer to Am. Compl., Doc. 9, at 4.

Eight Affirmative defense is an assertion with absolutely no supporting evidence. Given that it is essentially the definition of a conclusory statement, the Court orders Defendant to provide a more definite statement in accordance with the *Iqbal/Twombly* standard.

**IT IS ACCORDINGLY ORDERED** this 1st day of August, 2013, that Plaintiffs' Motion to Strike Affirmative Defenses (Doc. 14) is hereby **GRANTED IN PART** and **DENIED IN PART**. Defendant's Fourth Affirmative Defense is hereby stricken, and Defendant is ordered to make a more definite statement of its Fifth, Sixth, Seventh, and Eighth Affirmative Defenses.

Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, Defendant has fourteen days from the date this order is filed in which to provide a more definite statement of the aforementioned affirmative defenses. Thus, Defendant has until August 15, 2013, to comply with this Court's order.

**IT IS SO ORDERED**.

*/s/ Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE